IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| DAVID E. TRAVIS, | ) | CASE NO. 1:09 CV 2187 |
| | ) | |
| Petitioner, | ) | JUDGE PATRICIA A. GAUGHAN |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| KEITH SMITH, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

## Introduction

Before me by referral[1] is the *pro se* petition of David E. Travis for a writ of habeas

corpus under 28 U.S.C. 2254.[2]  Travis is currently incarcerated by the State of Ohio at the

Marion Correctional Institution in Marion, Ohio.[3]  He is serving a ten-year sentence imposed

in 2006 by the Medina County, Ohio, Court of Common Pleas after he was convicted at a

jury trial of one count of rape of a child under the age of thirteen.[4]

_____

[1] On November 10, 2009, this matter was initially referred by non-document order
under Local Rule 72.2 to Benita Y. Pearson while she was then a United States Magistrate
Judge.  Subsequent to Judge Pearson being sworn in as United States District Judge, the
matter was referred to me by non-document order of January 18, 2011, under General Order
2011-2.

[2] ECF # 1.

[3] *See*, www.drc.ohio.gov; *see also*, ECF # 12.  At the time the petition was filed,
Travis was incarcerated by the State at the Mansfield Correctional Institution.  ECF # 1 at 1.

[4] ECF # 1 at 1-2.

In his petition, Travis raises two grounds for relief, contending:  (1) that the trial court erred by permitting the introduction of prior acts evidence; and (2) that he was denied the effective assistance of appellate counsel when counsel failed to raise material issues on appeal.[5]  He also seeks an evidentiary hearing.[6]  The State, in response, argues first that ground one:  (a) is not cognizable here inasmuch as it is only a question of state evidence law;[7] or (b) is procedurally defaulted for being presented to Ohio courts only as an issue of state law;[8] or, alternatively, (c) should be denied on the merits.[9]  As to the claim of ineffective assistance of appellate counsel, the State asserts that it should be denied because the decision of the Ohio appeals court in this regard was not an unreasonable application of clearly established federal law.[10]

For the reasons that follow, I will recommend first that the motion for an evidentiary hearing be denied and further that the petition be dismissed in part and denied in part.

---

[5] *Id*. at 17-19, 20-22.

[6] *Id*. at 15.

[7] ECF # 8 at 7-9.

[8] *Id*. at 11-12.

[9] *Id*. at 14-19.

[10] *Id*. at 19-23.

-2-

# Facts

## A.    The underlying offense, trial, and sentence

The relevant facts concerning the offense as found by the state appeals court[11] are not extensive.  V.S., a female who was eleven years old at the time of the events in question, lived in the same Lodi, Ohio, apartment building as Travis, a former Lodi police officer.[12] V.S. had interacted with Travis while she played outside and through messaging in the computer.[13]  In July 2002, Travis offered to teach V.S. to play the drums.[14]

As V.S. arrived at Travis's apartment for a drum lesson, she was taken downstairs to the basement, where the drum set and a futon-style couch was located.[15]  After showing V.S. the drums, Travis walked to the futon and asked V.S. to come over to him.[16]  When she complied, Travis grabbed her and pushed her onto her back on the futon, positioning himself between her legs.[17]  Travis put his hand under V.S.'s shirt and then unbuttoned her pants, as

---

[11] Facts found by the state appeals court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[12] ECF # 8, Attachment (state court record) at 77.  Though not Bates-stamped, the entire state court record is consecutively paginated within the ECF system.  For ease of reference, I will use the ECF page number throughout in referring to portions of the record.

[13] *Id*.

[14] *Id*.

[15] *Id*. at 78.

[16] *Id.*

[17] *Id*.

she repeatedly asked if she could just play the drums.[18]  Ignoring her requests, Travis eventually pulled her pants down to her knees and got on top of V.S., preventing her from escaping.[19]

Once he had restrained V.S. in this fashion, Travis forced his tongue into V.S.'s mouth, pulled down his pants and unsuccessfully attempted to penetrate V.S. vaginally.[20] He then changed position so he could penetrate her orally, which he did.[21]  This encounter was interrupted when Travis heard his roommate moving around upstairs.[22]  V.S. dressed quickly and left.[23]

Although V.S. did not tell her parents, who were friends with Travis, about what happened to her, she did later write a detailed description of the event in her online diary (the "Bloop diary").[24]  In that diary, she had also described a previous event where Travis had sexual contact with J.M., a friend of V.S.[25]

---

[18] *Id*.

[19] *Id*.

[20] *Id.*

[21] *Id*.

[22] *Id*.

[23] *Id*.

[24] *Id*. at 79.

[25] *Id*.

J.M., who was 12 at the time of her contact with Travis and who testified at trial concerning that encounter, had met Travis through V.S.[26]  She stated that she had discussed sexual matters with Travis, and that he had, on more than one occasion, touched her breasts both on top of and underneath her clothes, including once when she had "flashed" her breasts to Travis on a dare.[27]

After hearing the evidence concerning the act against V.S., and the fact that Travis had been previously convicted of gross sexual imposition against J.M., as well as evidence relating to that act (evidence Travis sought to preclude), the jury in July, 2006, found Travis guilty of rape of a child under the age of thirteen.[28]  The trial court thereupon sentenced Travis to ten years imprisonment and also designated him a sexual predator.[29]

---

[26] *Id*. at 81.

[27] *Id*.

[28] *Id*. at 74-75.

[29] *Id*. at 75.

**B.**     **Direct appeal**

*1.*     ***Ohio appeals court***

Travis, through new counsel,[30] then timely filed an appeal,[31] raising two assignments

of error:

> 1.     The trial court erred to the prejudice of Appellant by denying
>        Appellant's motion in limine and permitting the introduction of
>        evidence of prior acts by Defendant in contravention of the Ohio Rules
>        of Evidence, as such evidence was more prejudicial than probative and
>        bore no relevance to the case at bar, thus denying Defendant a fair
>        trial.[32]
>
> 2.     The trial court denied Appellant his due process rights as the conviction
>        for rape was against the manifest weight of the evidence.[33]

The State filed a brief in opposition,[34] and on December 17, 2007, the Ohio appeals

court overruled both assignments of error and confirmed the judgment of the trial court.[35]

---

[30] Travis was represented at trial by Paul Grant, *see*, *id.* at 13, and on appeal by Conrad Olson, *see*, *id.* at 19.

[31] *Id.* at 19.  The conviction and sentence were entered on July 28, 2006, and the notice of appeal filed on August 6, 2006.  Under Ohio App. Rule 4(A), to be timely, a party must file a notice of appeal within thirty days of the judgment being appealed.  *See also*, *Smith v. Konteh*, 2007 WL 171978, at * 2 (N.D. Ohio Jan. 18, 2007).

[32] ECF # 8 at 24.

[33] *Id.*

[34] *Id.* at 43-67.

[35] *Id.* at 74-89.

## 2.      *The Supreme Court of Ohio*

On January 28, 2008, Travis, *pro se*, filed a timely notice of appeal with the Ohio

Supreme Court.[36] In his memorandum in support of jurisdiction,[37] Travis asserted the

following two propositions of law:

1.      The trial court erred to the prejudice of Appellant by denying
        Appellant's motion in limine and permitting the introduction of
        evidence of prior acts by Appellant in contravention of the Ohio Rule
        of Evidence, as such evidence was more prejudicial than probative and
        bore no relevance to the case at bar, thus denying Appellant a fair and
        impartial trial.[38]

2.      The trial court denied Appellant his due process rights as the conviction
        for rape was against the manifest weight of the evidence.[39]

The State did not file a response.[40] On June 9, 2008, the Supreme Court of Ohio

thereupon declined to exercise jurisdiction, dismissing the appeal as not involving a

substantial constitutional question.[41]

---

[36] *Id*. at 90-91.  To be timely under Ohio Supreme Court Rule of Practice 2.2(A)(1)(a),
a notice of appeal must be filed within 45 days of entry of the appellate judgment for which
review is sought.  *See also*, *Applegarth v. Warden*, 377 F. App'x 448, 450 (6th Cir. 2010).

[37] ECF # 8 at 92-104.

[38] *Id*. at 93.

[39] *Id*.

[40] *See*, ECF # 8 at 6.

[41] ECF # 8, Attachment at 122.

-7-

**C.      Rule 26(B) application to reopen direct appeal**

*1.      The court of appeals*

While the direct appeal was still pending before the Ohio Supreme Court, Travis,

*pro se*, on March 17, 2008, timely filed an application with the Ohio appeals court to reopen

his direct appeal under Ohio Appellate Rule 26(B).[42]  In his brief in support of the application

to reopen, Travis alleged that his appellate counsel was ineffective for failing to raise the

following two issues on appeal:

> 1.      Appellant's right to be informed of the nature and cause of the accusation and due process as protected by the Ohio and United States Constitutions were violated where the indictment lacked sufficient specificity regarding the alleged dates of the incident.[43]
>
> 2.      The evidence in this case was insufficient as a matter of law to support a conviction of rape and as a result Appellant's rights as protected by Article I, Section 16 of the Ohio Constitution and the Fifth Amendment of the United States Constitution were violated.[44]

---

[42] *Id*. at 123-31.  Ohio App. R. 26(B) provides that an application to reopen shall be filed within 90 days from the journalization of the judgment entry of the appeal sought to be reopened.  Here, the appellate decision was entered on December 17, 2007, and the Rule 26(B) application filed March 17, 2008.

[43] *Id*. at 125.

[44] *Id*. at 126.

-8-

The State filed a memorandum in opposition to reopening,[45] to which Travis filed a response.[46]  On April 21, 2008, the court of appeals then denied the application to reopen.[47]

## 2.     *The Supreme Court of Ohio*

Travis, *pro se*, thereupon timely filed a notice of appeal with the Supreme Court of Ohio.[48]  In his memorandum in support of jurisdiction,[49] Travis submitted two propositions of law:

1.     Appellant was deprived of his constitutional right to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution, and in violation of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 647, where counsel on appeal failed to advocate his cause skillfully by omitting dead-bang winners in favor of obvious weaker issues having absolutely no chance of success.[50]

2.     Where Appellant files an application for reopening pursuant to *State v. Murnahan* (1992), 63 Ohio St.3d 60, 584 N.E.2d 1204 and App. R. 26(B) and presents clear and obvious genuine issues as to whether he was deprived of the effective assistance of counsel on appeal, the court of appeals' (sic) denial of such application was abuse of discretion which further deprives Appellant of his constitutional right to effective

---

[45] *Id.* at 140-44.

[46] *Id*. at 145-47.

[47] *Id*. at 148-50.

[48] *Id*. at 151-52.  The notice of appeal was filed with the Ohio Supreme Court on June 4, 2008, or within 45 days of the appellate decision.

[49] *Id*. at 153-65.

[50] *Id*. at 154.

assistance as guaranteed by the United States Constitution and Ohio Constitution.[51]

The State did not file a response.[52]  The Ohio Supreme Court on September 10, 2008, declined jurisdiction, dismissing the appeal as not involving any substantial constitutional question.[53]  The record does not indicate that Travis then sought a writ of certiorari from the Supreme Court of the United States.

## D.    Federal habeas petition

Travis, *pro se*, then filed the present petition in this Court for a writ of habeas corpus.[54]  As noted above, Travis asserts two grounds for relief:

1.    The trial court erred to the prejudice of Petitioner by denying Petitioner's Motion in Limine and permitting the introduction of evidence of prior acts by Petitioner which was more prejudicial than probative and bore no relevance to the case at bar, thus, denying Petitioner a fair and impartial trial.[55]

---

[51] *Id.*

[52] *See*, ECF # 8 at 7.

[53] ECF # 8, Attachment at 169.

[54] ECF # 1.  I note that, although the petition was docketed as filed by the clerk's office on September 21, 2009, Travis placed the petition in the prison mail system on September 9, 2009.  ECF # 1 at 15.  This is the date Travis, a *pro se* prisoner in state custody, stated this petition was put into the prison mail system for forwarding to this Court.  The "prison mailbox rule" of *Houston v. Lack*, 487 U.S. 266, 276 (1988) recognizes that date as the date of filing.

[55] ECF # 1 at 17.

2.    Petitioner's Sixth Amendment right to effective assistance was violated by virtue of his appellate counsel's failure to raise material issues on appeal, prejudicing Petitioner to receiving (sic) a full review on appeal as of right.[56]

The State responded, and in the return of the writ argued first that ground one is either non-cognizable as purely a state law issue[57] or, if a federal constitutional issue, was waived by being presented to Ohio courts only as a matter of Ohio law;[58] or alternatively, that the state court decision denying this claim was not an unreasonable application of clearly established federal law on fundamental fairness.[59]  The State further contends that ground two should be denied because the Ohio appellate decision denying the Rule 26(B) application was not an unreasonable application of the clearly established federal law of *Strickland*.[60]

Travis filed a traverse,[61] maintaining first as to ground one that, because the rule against propensity evidence dates back to the common law, the claim in ground one is cognizable here as a federal constitutional claim.[62]  Moreover, he argues that, because Ohio courts have previously subjected claims based on purported violations of Ohio Evidence

---

[56] *Id*. at 20.

[57] ECF # 8 at 7-11.

[58] *Id*. at 11-12.

[59] *Id*. at 14-18.

[60] *Id*. at 19-23, citing *Strickland v. Washington*, 466 U.S. 668 (1984).

[61] ECF # 12.

[62] *Id*. at 3-4.

Rule 404(B) to constitutional analysis, his claim was not waived for lack of fair presentment.[63]  Finally, he asserts that the ineffective assistance claim in ground two – insofar as it concerns a failure to raise on appeal the alleged lack of specificity in the indictment – was improperly decided by the Ohio appeals court by a failure to properly apply clearly established federal law as regards sufficiency of an indictment.[64]

## Analysis

### A.    Preliminary observations

Before proceeding to an analysis of the petition, I make the following initial observations:

1.    There is no dispute that Travis is currently incarcerated by the State of Ohio as a result of his conviction by an Ohio court, and was so incarcerated at the time he filed the present petition for federal habeas relief.  Thus, I recommend finding that Travis meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[65]

2.    There is also, as noted above, no dispute that by placing this petition in the prison mail system on September 9, 2009, the petition was timely filed within one year of the conclusion of state direct review, as extended by a properly filed motion for post-conviction relief.[66]

---

[63] *Id.* at 4-7.

[64] *Id.* at 7-9.

[65] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

[66] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

-12-

3.     In addition, the claims here have been totally exhausted in the Ohio courts, as required by statute, by virtue of having been fairly presented as federal constitutional claims to those courts through one full round of Ohio's established appeals process.[67]

4.     Finally, as noted earlier, Travis has requested an evidentiary hearing,[68] which would require the appointment of counsel.[69] As will be developed below, there is no need for an evidentiary hearing.

## B.     Standards of review

### 1.     *Noncognizable claims*

The federal habeas statute, by its own terms, restricts the writ to state prisoners who are in custody in violation of federal law.[70]  Accordingly, it is well-settled that, to the extent a petitioner claims that his custody is a violation of state law, the petitioner has failed to state a claim upon which federal habeas relief may be granted.[71]  In such circumstances, a claim for federal habeas relief based solely on the ground of purported violation of state law is properly dismissed by the federal habeas court as non-cognizable.[72]

---

[67] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).

[68] 28 U.S.C. § 2254(e).

[69] 28 U.S.C. § 2254(h); Rule 8(c), Rules Governing § 2254 Cases.

[70] 28 U.S.C. § 2254(a).

[71] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[72] *Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991); *Bey v. Bagley*, 500 F.3d 514, 519 (6th Cir. 2007).

However, a claimed error of state law may nevertheless serve as the basis for federal habeas relief if such error resulted in the petitioner being denied "fundamental fairness" at trial.[73]  The Supreme Court has made clear that it defines "very narrowly" the category of infractions that violate the "fundamental fairness"of a trial.[74]  Specifically, such violations are restricted to offenses against "'some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"[75]

The petitioner bears the burden of showing that a principle of fundamental fairness was violated.[76]  In so doing, the federal habeas court must follow the rulings of the state's highest court with respect to state law[77] and may not second-guess a state court's interpretation of its own procedural rules.[78]  Further, while, in general, distinct constitutional claims of trial error may not be cumulated to grant habeas relief,[79] the Sixth Circuit has recognized that "'[e]rrors that might not be so prejudicial as to amount to a deprivation of

---

[73] *Estelle*, 502 U.S. at 67-68.

[74] *Bey*, 500 F.3d at 522, quoting *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[75] *Id*. at 521, quoting *Montana v. Egelhoff*, 518 U.S. 37, 43 (1996).

[76] *Id.*

[77] *Wainwright v. Goode*, 464 U.S. 78, 84 (1983).

[78] *Allen v. Morris*, 845 F.2d 610, 614 (6th Cir. 1988).

[79] *Williams v. Anderson*, 460 F.3d 789, 816 (6th Cir. 2006).

-14-

due process when considered alone, may cumulatively produce a trial setting that is fundamentally unfair.'"[80]

## 2.     *AEDPA review*

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute is plain that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[81]

In applying that statute, a federal habeas court is guided by the well-known teachings of *Williams v. Taylor*.[82]   As stated by the United States Supreme Court in *Williams,* a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[83] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal

---

[80] *Gillard v. Mitchell*, 445 F.3d 883, 898 (6th Cir. 2006), quoting *Walker v. Engle*, 703 F.2d 959, 963 (6th Cir. 1983).

[81] 28 U.S.C. § 2254(d).

[82] *Williams v. Taylor*, 529 U.S. 362 (2000).

[83] *Id.* at 412.  *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[84]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."[85]  Rather, the state court holding may be disturbed only upon showing that it was "objectively unreasonable."[86]

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[87]

Finally, where a state court does not address the merits of a federal claim properly presented to it, "the deference due [a state court decision by the federal habeas court] under the AEDPA does not apply."[88]  Then, the federal court is to review the claim *de novo*.[89]

---

[84] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

[85] *Williams*, 529 U.S. at 411.

[86] *Id*. at 409.

[87] *Id.* at 405-07.  *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[88] *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[89] *Id.*

-16-

### 3.    *Ineffective assistance of appellate counsel*

In *Higgins v. Renico*,[90] the Sixth Circuit re-stated the foundational rubric for reviewing claims of ineffective assistance of counsel pursuant to the long-standing teaching of *Strickland v. Washington*:[91]

> Under *Strickland*, a defendant must establish both that his counsel's performance was seriously deficient and also that he suffered prejudice as a result of such deficiency.[92]

The *Higgins* court then proceeded to discuss the applicable standards for evaluating each prong of the *Strickland* test.  It explained seriously deficient performance in the following terms:

> When complaining of his counsel's deficient performance, a convicted defendant must show that counsel's representation fell below "an objective standard of reasonableness" under "prevailing professional norms."  A reviewing court must judge the reasonableness of counsel's actions on the facts of the defendant's case, viewed from counsel's perspective at the time, recognizing that "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  In essence, a defendant has the burden of proving by a preponderance of the evidence, that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."

---

[90] *Higgins v. Renico*, 470 F.3d 624 (6th Cir. 2006).

[91] *Strickland v. Washington*, 466 U.S. 668 (1984).

[92] *Higgins*, 470 F.3d at 631.

-17-

"Because advocacy is an art not a science, ... [counsel's] strategic choices must be respected" if they were made after a thorough investigation of the law and facts relevant to possible options."  Such choices can vary greatly from attorney to attorney and from case to case, and reviewing courts must scrutinize these choices with a great deal of deference.  Indeed, such strategic choices are virtually unchallengeable.  As explained by the Supreme Court:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

Thus, counsel cannot be adjudged ineffective for performing in a particular way in a case, as long as the approach taken "might be considered sound trial strategy."[93]

The clearly established federal law of establishing prejudice from deficient performance of counsel was stated by the *Higgins* court as follows:

> Even where counsel's performance is deficient, a petitioner is not entitled to habeas relief unless he also demonstrates ensuing prejudice.  In evaluating the prejudice suffered by a defendant as a result of his counsel's deficient performance, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceedings."

---

[93] *Id.* at 631-32 (internal citations omitted).

-18-

Indeed, "[v]irtually every act or omission of counsel would meet that test, and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." Rather, the defendant "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Although the defendant need not prove that counsel's deficient conduct more likely than not affected the verdict, the defendant must show that "absent his counsel's error, the courts of appeal would have reasonable doubt with respect to his guilt."  "[T]he ultimate focus of inquiry must be on the fundamental fairness of the proceeding whose result is being challenged."  In this vein, the court must determine whether "the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results."

Whether an error actually prejudiced a defendant is weighed against the "totality of the evidence before the judge or jury."  A verdict "only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."[94]

Moreover, it is well-settled that a federal habeas court may, as an initial inquiry, consider either the alleged deficiency itself or the claim of prejudice resulting from such deficiency since establishing both prongs is required to grant the writ.[95]

**C.     Application of standards**

*1.     Ground one should be dismissed as noncognizable*

As discussed above,  and as stated numerous times by this Court, alleged errors of state law in the admission of evidence do not generally state a constitutional claim for federal

---

[94] *Id.* at 633-34 (internal citations and parenthetical comments omitted).

[95] *Id.* at 631 n.3.

habeas relief.[96]  As also noted, only when a state court evidentiary ruling is so egregious as to violate fundamental fairness, may such a ruling result in a denial of due process and so implicate a constitutional principle.[97]

In that regard, as the Sixth Circuit noted in *Bugh v. Mitchell*, that "[t]here is no clearly established Supreme Court precedent which holds that a state violates due process by permitting  propensity evidence in the form of other bad acts evidence."[98]  Thus, in the absence of teaching by the Supreme Court, it is Travis who must show how the state court ruling here on a matter of state law – a ruling which this court may not question – violated some principle of justice so deeply rooted in the traditions and conscience of our people as to be ranked as fundamental.[99]

Based on the record, I recommend finding that Travis has not met that burden and has not shown how the decision to admit the prior acts evidence in this case violated fundamental fairness.  In particular, the appeals court decision shows that, prior to the admission at this trial of J.M.'s testimony as to Travis's previous sexual encounter with her, the trial judge

---

[96] *See*, *Fletcher v. Beightler*, 2011 WL 741294, at *4 (N.D. Ohio Feb. 24, 2011) (collecting cases).

[97] *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000) (citation omitted).

[98] *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003).

[99] Travis in his traverse attempts to argue generally that cases arising under Ohio Evidence Rule 404(B) are suitable for constitutional analysis but does not address the standard, cited above, as to why that result might obtain, not show, how his case falls within the limited number of cases where the state court ruling violated a fundamental principle of justice.  *See*, ECF # 12 at 6-7.

-20-

permitted both sides to conduct a voir dire of J.M. outside the presence of the jury.[100]  The court then noted, under Ohio Evidence Rule 404(B), that J.M.'s testimony would not be admissible as to prove that Travis had a certain character, or acted in conformity with such character, but could be used to show motive, opportunity, intent, preparation, plan, knowledge, identity, and lack of mistake or accident.[101]

Under that rubric, the court analyzed the intended testimony of J.M., and found, like the situation with V.S., that (1) J.M. had communicated with Travis on the computer before and after the encounter; (2) both victims were the same age (12) when molested; and (3) both encounters had similar features of touching the victim's breast both over and under her clothing.[102]  Because such evidence was relevant to showing motive, opportunity, intent, preparation, plan, knowledge, identity, and lack of mistake or accident, the trial judge permitted that testimony by J.M., subject to a limiting instruction to the jury.[103]  The appeals court noted that admission of such testimony by a prior sexual assault victim has consistently been held proper in Ohio law to prove motive, plan, or intent in the current case.[104]

Given that: (1) the trial judge was careful to conduct a voir dire prior to J.M.'s testimony; (2) identified and applied the correct principle of law to the question of

---

[100] ECF # 8, Attachment at 84.

[101] *Id.*

[102] *Id.* at 84-85.

[103] *Id.* at 85.

[104] *Id.* at 85-86 (citing cases).

admissibility; (3) determined that the similarities between what occurred with J.M. and what was alleged to have occurred with V.S. went to proving motive, intent, and preparation by Travis – a position fully in accord with Ohio case law; and (4) provided  limiting instruction for the jury, I note – in addition to finding that Travis failed to prove that fundamental fairness was violated – that the trial court here demonstrated no violation of fundamental fairness in permitting J.M. to testify as to Travis's prior acts with her.

Thus, I recommend that ground one be dismissed as non-cognizable.

**2.      *Ground two should be denied since the decision of the state appeals court was not an unreasonable application of Strickland.***

In this claim, Travis argues that appellate counsel was ineffective for not arguing that (1) the indictment lacked specificity and (2) there was insufficient evidence to support the conviction for rape.

As to the first argument, the state appeals court found that there was no evidence that the state knew, but withheld, the exact date and time of the rape from the indictment.[105] Moreover, it found that such details were not elements of the crime here, nor had Travis shown how the lack of such details prejudiced his defense.[106]  Under such circumstances, the court concluded that it was not improper for his appellate counsel to fail to assert this claim on appeal.[107]

---

[105] *Id.* at 149.

[106] *Id*. at 149-50.

[107] *Id*. at 150.

As to the sufficiency of the evidence argument, the appeals court observed that counsel did raise a manifest weight of the evidence argument and that under Ohio law a determination that a conviction was supported by the manifest weight of the evidence is dispositive of a claim regarding the sufficiency of the evidence.[108]

Further, the Ohio appeals court stated, even if Travis's appellate representation could be found deficient for failing to raise these arguments, that his counsel could not be found ineffective under the second prong of *Strickland* because Travis could not show, even with presenting these arguments on appeal, that the result would have been different.[109]

Here, Travis attempts in his traverse to merely assert that these determinations of the state appeals court as to ground two were unreasonable applications of *Strickland*.[110]  In particular, he makes no further argument as to the sufficiency of the evidence claim and simply re-states the general rules as to what constitutes a sufficient indictment.[111]

In so restating the basic rubric, Travis himself notes that sufficiency of the indictment under both the Ohio and United States constitutions primarily means that the indictment sites notice to a defendant that he is being charged with doing each element of the offense at issue.[112]  In so noting this rule, however, Travis does not address the salient point of the

---

[108] *Id.*

[109] *Id.*

[110] ECF # 12 at 8-9.

[111] *Id.* at 9.

[112] *Id.*

appeals court here:  that in not specifying the exact date or time, the indictment here did not neglect to list any element of the offense charged and so would not be found constitutionally deficient, since neither the time nor date is an element of the crime of rape.

Thus, based on the decision of the state appeals court and the arguments advanced in the traverse, I recommend finding that the appellate court adjudication of the claim in ground two was not an unreasonable application of *Strickland.*  Accordingly, I further recommend that ground two be denied.

## Conclusion

For the foregoing reasons, I recommend that the petition of David E. Travis for a writ of habeas corpus be dismissed in part and denied in part as is more fully stated above.

Dated:   March 31, 2011                          s/ William H. Baughman, Jr.
                                                 United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[113]

---

[113] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).

-24-